**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JEFFREY SCHWARTZ,

               Plaintiff,

    vs.

SUPPLY NETWORK, INC., d/b/a Viking
SupplyNet, a foreign corporation,

          Defendant.

Case No.: 1:23-cv-14319

Honorable Charles P. Kocoras

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS COMPLAINT**

## <u>TABLE OF CONTENTS</u>

Introduction.................................................................................................................1

Legal Standard ............................................................................................................2

Argument ....................................................................................................................2

     I.     THE JUDICIAL ESTOPPEL DEFENSE HAS BEEN MOOTED BY THE ACTIONS OF THE BANKRUPTCY COURT ........................................2

     II.    DEFENDANT HAS FAILED TO PROVE THAT PLAINTIFF WAS ACTING WITH THE INTENT TO DECEIVE OR MANIPULATE THE BANKRUPTCY COURT ........................................................................4

     III.   THE PLAINTIFF'S 15(a) CLAIM IS RIPE FOR ADJUDICATION ON MULTIPLE GROUNDS .....................................................................6

     IV.   THE PLAINTIFF PLAUSIBLY PLEADS THAT DEFENDANT DISSEMINATED HIS BIOMETRIC DATA TO ITS PAYROLL VENDOR ..............................................................................................9

     V.    THE § 15(d)(2) EXEMPTION APPLIED TO "FINANCIAL TRANSACTIONS" REGULATED UNDER THE GRAMM-LEACH-BLILEY ACT .......................................................................11

     VI.   DEFENDANT IS CONFLATING THE DOCTRINE OF LACHES WITH COMMON LAW TORT DEFENSES TO LIABILITY ............................12

     VII.  PLAINTIFF IS NOT REQUIRED TO PLEAD SPECIFIC FACTS FROM WHICH TO INFER NEGLIGENCE, RECKLESSNESS, OR INTENT TO STATE A CLAIM UNDER BIPA ...............................................15

Conclusion .................................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Cases**          **Page(s)**

*Aiardo v. Libertyville*,
     184 Ill. App. 3d 653, 659, 132 Ill. Dec. 939, 944, 540 N.E.2d 861, 866 (2nd Dist. 1989).......12

*Barthel v. Ill. C. G. R. Co.*,
     74 Ill. 2d 213, 221-22, 23 Ill. Dec. 529, 533, 384 N.E.2d 323, 327 (Ill. 1978) .....................13

*Benson v. Fannie May Confections Brands, Inc.*,
     944 F.3d 639 (7th Cir. 2019) ....................................................................................................2

*Balik v. Blitt & Gaines, P.C.*,
     No. 14 C 8702, 2015 U.S. Dist. LEXIS 20869 (N.D. Ill. Feb. 21, 2015) .................................5

*Bradenberg v. Meridian Senior Living, LLC*,
     564 F. Supp. 3d 627, 635 (C.D. Ill. 2021) .............................................................................13

*Burton v. Ghosh*,
     961 F.3d 960, 964-65 (7th Cir. 2020) ......................................................................................2

*Cannon-Stokes v. Potter*,
     453 F.3d 446, 447 (7th Cir. 2006) ...........................................................................................4

*Carr v. Tillery*,
     591 F.3d 909, 913 (7th Cir. 2010) ...........................................................................................2

*Cothron v. White Castle Sys.*,
     466 Ill. Dec. 85, 216 N.E.3d 918 (Ill. 2023) .....................................................................5, 15

*David v. Wal-Mart Stores, Inc.*,
     No. 11 C 8833, 2014 U.S. Dist. LEXIS 151241, at *7 (N.D. Ill. 2014) ...................................4

*Fleury v. Union Pac. R.R.*,
     No. 20-cv-00390, 2022 U.S. Dist. LEXIS 98567 (N.D. Ill. 2022) .......................................7, 8

*Fox v. Dakkota Integrated Sys., LLC*,
     980 F.3d 1146, 1149 (7th Cir. 2020) ....................................................................................6, 7

*Harris v. Secretary, U.S. Dep't of Veterans Affairs*,
     126 F.3d 339, 343, 326 U.S. App. D.C. 362 (D.C. Cir. 1997) .................................................2

*Hollander v. Brown*,
     457 F.3d 688, 691 n.1 (7th Cir. 2006) ......................................................................................2

*In re Marriage of Smith*,
   347 Ill. App. 3d 395, 401, 282 Ill. Dec. 430, 435, 806 N.E.2d 727, 732 (2nd Dist. 2004) .....14

*Jones v. Microsoft Corp.*,
   649 F. Supp. 3d 679 (N.D. Ill. 2023) ..............................................................................9, 10

*Kukovec v. Estée Lauder Co.*,
   No. 22 CV 1988, 2022 U.S. Dist. LEXIS 202212, at *16-18 (N.D. Ill. Nov. 7, 2022)............9

*Kyles v. Hoosier Papa Ltd. Liab. Co.*,
   No. 1:20-CV-07146, 2023 U.S. Dist. LEXIS 54996, at *20 (N.D. Ill. Mar. 30, 2023)..........16

*Mayhall v. Amazon Web Servs., Inc.*,
   No. 2:21-cv-01473-TL, 2023 U.S. Dist. LEXIS 57070, at *8 (W.D. Wash. 2023) .................8

*Namuwonge v. Kronos, Inc.*,
   418 F. Supp. 3d 279 (N.D. Ill. 2019) .........................................................................9, 10, 15

*Noland v. Mendoza*,
   465 Ill. Dec. 334, 341, 215 N.E.3d 130, 137 (Ill. 2022) ........................................................14

*Norma Argueta v Proven Partners Group, LL,P*
   (Case No. 2023 CH 38, Kane Cnty. Oct. 25, 2023) ................................................................12

*Nseumen v. Dal Glob. Servs., Inc.*,
   No. 21 C 2630, 2021 U.S. Dist. LEXIS 195566 (N.D. Ill. 2021) .............................................7

*Olle v. C House Corp.*,
   359 Ill. Dec. 856, 860, 967 N.E.2d 886, 890 (1st Dist. 2012) ................................................13

*Opoka v. INS*,
   94 F.3d 392, 394 (7th Cir. 1996) ..............................................................................................3

*Perkinson v. Ill. State Police*,
   No. 15-cv-526-JPG-PMF, 2016 U.S. Dist. LEXIS 45988 (S.D. Ill. Apr. 5, 2016) ...................6

*Pruitt v. Quality Labor Servs.*,
   No. 16 C 09718, 2018 U.S. Dist. LEXIS 189935, at *3 (N.D. Ill. Nov. 6, 2018) ....................4

*Rainey v. UPS*,
   466 F. App'x 542, 543 (7th Cir. 2012)....................................................................................3, 4

*Richards v. Mitcheff*,
   696 F.3d 635, 637-38 (7th Cir. 2012) .......................................................................................2

*Rogers v. BNSF Ry. C*o.,
    2019 U.S. Dist. LEXIS 188961, at *12 (N.D. Ill. October 31, 2019)......................................16

*Rogers v. CSX Intermodal Terminals, Inc.*,
    409 F. Supp. 3d 612, 618 (N.D. Ill. 2019) ......................................................................15, 16

*Snider v. Heartland Beef*,
    479 F. Supp. 3d 762, 772 (C.D. Ill. 2020) ...............................................................................13

*Sosa v. Onfido, Inc.*,
    600 F. Supp. 3d 859, 875 (N.D. Ill. 2022) ......................................................................15, 16

*Spaine v. Cmty. Contacts, Inc.*,
    756 F.3d 542, 548 (7th Cir. 2014) .............................................................................................4

*Van v. Ford Motor Co.*,
    No. 14 cv 8708, 2016 U.S. Dist. LEXIS 40012, at *6 (N.D. Ill. Mar. 28, 2016) ......................5

*Vaughan v. Biomat USA, Inc.*,
    No. 20-cv-4241, 2022 U.S. Dist. LEXIS 168497, at *37 (N.D. Ill. Sep. 19, 2022) ...............13

*Ware v. Harvey Auto Credit, LLC*,
    No. 16 C 5691, 2017 U.S. Dist. LEXIS 85256, at *3-6 (N.D. Ill. 2017)...................................5

*Wilk v. Brainshark, Inc.*,
    631 F. Supp. 3d 522 (N.D. Ill. 2022) ......................................................................................16

*William Thompson v Matcor Metal Fabrication (Illinois), Inc.*,
    (Case No. 2020-CH-00132, Tazwell Cnty. Dec. 7, 2023).....................................................11

*Williams v. Hainje*,
    375 F. App'x 625, 626 (7th Cir. 2010)....................................................................................4, 5

## Statutes

Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ..................................... *passim*

## Other Authorities

Fed. R. Bankr. P. 1009(a) ...................................................................................................................3

Fed. R. Bankr. P. 6009........................................................................................................................3

Federal Rule of Civil Procedure 12(b)(6) ........................................................................................2

Fed. R. Evid. 201(d) ........................................................................................................3

11 U.S.C. § 541(a)(1) ......................................................................................................3

11 U.S.C. § 1302(a) .........................................................................................................3

11 U.S.C. § 1303 ..............................................................................................................3

11 U.S.C. § 1306(a)(1) .....................................................................................................3

11 U.S.C. § 1306(b) ..........................................................................................................3

Gramm-Leach-Bliley Act (GLBA), 15 U.S.C. § 6801 *et seq.* .......................................11

Plaintiff, JEFFREY SCHWARTZ, ("Plaintiff"), by and through the undersigned Counsel, and in opposition to the Motion to Dismiss filed by the Defendant, SUPPLY NETWORK, INC., d/b/a Viking SupplyNet, a foreign corporation, ("Defendant"), states and alleges as follows:

## Introduction

The Defendant's Motion attempts to shift the burden of compliance with the Biometric Information Privacy Act, 740 ILCS § 14/1, et seq. ("BIPA" or the "Act") onto consumers and employees. This not only seeks to replace BIPA's stringent strict liability provisions with a more lenient standard of ordinary negligence, but also proposes substituting the Act's statute of limitations with a defense based on laches. These arguments starkly contradict the Illinois General Assembly's clear intent: to unequivocally place the full onus of complying with BIPA on "private entities." This determination is underpinned by a self-evident reality – employees typically lack the requisite knowledge and bargaining power to protect themselves against the misuse of their biometric data by employers, necessitating robust legislative intervention.

Regarding the two affirmative defenses of judicial estoppel and ripeness, the Defendant completely and utterly fails to present any evidence that Plaintiff's omission of this claim from his bankruptcy case was an intentional act of concealment or anything other than an innocent mistake (an essential element of judicial estoppel that is not even mentioned in the Defendant's brief). Furthermore, the Defendant provides no evidence to justify its continued possession of Plaintiff's biometric data long after the initial purpose of its collection has been fulfilled. Additionally, the Plaintiff's Complaint not only meets but exceeds the requirements to state a claim under BIPA, given the Defendant's repeated unlawful 'dissemination' of his biometric data. The Defendant's Motion lacks any basis in law or fact, and therefore, it should be denied.

**Legal Standard**

Generally, affirmative defenses are not appropriately raised under Rule 12(b)(6). *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639 (7th Cir. 2019). The reason for this is that a complaint is not required to allege facts that would defeat an affirmative defense because the defendant bears the burden of proof. *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006). Instead, the proper procedure is to "answer and then move under Rule 12(c) for judgment on the pleadings." *Burton v. Ghosh*, 961 F.3d 960, 964-65 (7th Cir. 2020) (citing *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010)). "Failure to follow this process may 'deprive[] the opposing party of precisely the notice that would enable it to dispute the crucial issues of the case on equal terms.'" *Id* (quoting *Harris v. Secretary, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 343, 326 U.S. App. D.C. 362 (D.C. Cir. 1997)). However, courts have carved out a pragmatic exception to this rule in the limited circumstances where a plaintiff "has pleaded himself out of court," by alleging all the facts necessary to establish the defense in the complaint. *Richards v. Mitcheff*, 696 F.3d 635, 637-38 (7th Cir. 2012).

**Argument**

I. **THE JUDICIAL ESTOPPEL DEFENSE HAS BEEN MOOTED BY THE ACTIONS OF THE BANKRUPTCY COURT**

Upon learning of Defendant's allegation this claim was not properly disclosed in an underlying Chapter 13 proceeding, Plaintiff's counsel promptly alerted the bankruptcy court and the Chapter 13 Trustee of the potential asset of Schwartz's bankruptcy estate. Plaintiff's counsel moved to reopen and reinstate the Chapter 13 Bankruptcy Case. The Bankruptcy Court reopened and reinstated the Plaintiff's Chapter 13 Bankruptcy Case. See Bankruptcy Case No. 19-06979 Dkt. 102, 103 (Bankr. N.D. Ill.).

2

"A Chapter 13 estate encompasses all property, including legal claims, acquired after the petition is filed and before the case is closed. 11 U.S.C. §§ 541(a)(1), 1306(a)(1). Debtors have a continuing duty to schedule newly acquired assets while the bankruptcy case is open. Although there is a trustee in a Chapter 13 bankruptcy, the trustee acts as an advisor and administrator while the debtor remains in possession of the estate. 11 U.S.C. §§ 1302(a), 1303, 1306(b). The debtor thus can pursue legal claims for the benefit of the estate and its creditors. Fed. R. Bankr. P. 6009. Once the bankruptcy case is closed, however, a debtor no longer can pursue claims on behalf of the estate, and typically will be estopped from pursuing claims for his own benefit if those claims were concealed from creditors during the bankruptcy proceedings. But as long as the bankruptcy proceedings are ongoing, a Chapter 13 debtor can inform the trustee of previously undisclosed legal claims, and unless the trustee elects to abandon that property, the debtor may litigate the claims on behalf of the estate and for the benefit of the creditors without court approval. Fed. R. Bankr. P. 1009(a), 6009." *Rainey v. UPS*, 466 F. App'x 542, 543 (7th Cir. 2012). "[I]t is a well-settled principle that the decision of another court or agency, including the decision of an administrative law judge, is a proper subject of judicial notice." *Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996). "The court may take judicial notice at any stage of the proceeding." Fed. R. Evid. 201(d).

*Rainey* controls this issue. Because the Bankruptcy Court reopened the case for this asset to be administered, the creditors of the Plaintiff's estate are the beneficiaries of any recovery up to 100% of their scheduled debts. Schwartz would only be entitled to recover any amounts exceeding the full repayment of his creditors. There can be no judicial estoppel because Schwartz, through counsel, immediately notified the Bankruptcy Court of the asset when the Defendant's filing alerted them to the prior bankruptcy. Schwartz disclosed the asset, the Bankruptcy Court and

Chapter 13 Trustee took jurisdiction of the asset by reopening the bankruptcy case, and now, under well-established bankruptcy procedure discussed in *Rainey,* Schwartz has the authority under the Code to prosecute this action for the benefit of the creditors of his estate. In fact, granting the Defendant's motion would punish the innocent creditors of Schwartz's bankruptcy estate while allowing the Defendant to escape liability for its wrongdoing on the specious assertion that Schwartz intended to defraud his creditors.

## II.    DEFENDANT HAS FAILED TO PROVE THAT PLAINTIFF WAS ACTING WITH THE INTENT TO DECEIVE OR MANIPULATE THE BANKRUPTCY COURT

The Seventh Circuit Court of Appeals has held that in order to establish a judicial estoppel defense, a defendant must prove that the plaintiff acted "with the subjective intent to conceal her lawsuit." *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 548 (7th Cir. 2014) (defendant must prove "more than an initial nondisclosure on a bankruptcy schedule."); See *Cannon-Stokes v. Potter*, 453 F.3d 446, 447 (7th Cir. 2006) (plaintiff-debtor was already pursing administrative claim of $300,000 from the Postal Service at time she filed a Chapter 7 bankruptcy petition expressly denying that she had any valuable legal claims.); *Williams v. Hainje*, 375 F. App'x 625, 626 (7th Cir. 2010) (bankruptcy petitioner judicially estopped for failing to disclose an active suit against police officer that was already well into discovery when bankruptcy petition was filed). Thus, in order to succeed, "a defendant must prove by a preponderance of the evidence that the plaintiff-debtor intentionally concealed the claim" from the bankruptcy court. *Pruitt v. Quality Labor Servs.*, No. 16 C 09718, 2018 U.S. Dist. LEXIS 189935, at *3 (N.D. Ill. Nov. 6, 2018) ("[T]he Seventh Circuit has held that only *intentional* concealment of a legal claim triggers judicial estoppel.") (emphasis in original) (citing *Spaine*)); See also *David v. Wal-Mart Stores, Inc.*, No. 11 C 8833, 2014 U.S. Dist. LEXIS 151241, at *7 (N.D. Ill. 2014) ("The Seventh Circuit's latest

precedential decision on the subject, . . . clearly holds that judicial estoppel applies *only* if the plaintiff's failure to disclose a legal claim during his bankruptcy case resulted from an intent to deceive or manipulate the bankruptcy court.") (emphasis in original) (citing *Spaine*); *Ware v. Harvey Auto Credit, LLC*, No. 16 C 5691, 2017 U.S. Dist. LEXIS 85256, at *3-6 (N.D. Ill. 2017) ("While the timing of plaintiff's lawsuit and his amendment in the bankruptcy court may be suspect, at this stage of the litigation the Court draws all reasonable inferences in plaintiff's favor."); *Van v. Ford Motor Co.*, No. 14 cv 8708, 2016 U.S. Dist. LEXIS 40012, at *6 (N.D. Ill. Mar. 28, 2016) ("Courts make an exception where an omission of a claim from the bankruptcy schedule is 'innocent,' meaning based on poor communication with counsel or on the good faith belief that the claim has no value.").

In *Williams*, the court was able to infer the plaintiff's intent from the record, finding his "suit was on his mind as he prepared those disclosures because he reported as unsecured debt the medical expenses that he allegedly incurred from the underlying injury. From those facts, the district court reasonably inferred that Williams made a knowing misrepresentation." *Id* at 628. This inference was further supported by the fact that the undisclosed lawsuit was already in discovery at the time the bankruptcy petition was filed. *Id.* Here, with no evidence of intent being offered by the Defendant, the Court is obligated to draw the reasonable and obvious inference that the Plaintiff's omission of this claim from his bankruptcy case was completely innocent and inadvertent, and that Plaintiff likely had no idea what BIPA even was until he was in communication with his present counsel.[1] Finally, because the court is limited to considering the

---

[1] Plaintiff notes that his bankruptcy case was dismissed in December of 2022, Case No. 19-06979 Dkt. 91 (Bankr. N.D. Ill.), one month before the Illinois Supreme Court issued its seminal case, *Cothron v. White Castle Sys.*, 466 Ill. Dec. 85, 216 N.E.3d 918 (Ill. 2023), which greatly expanded the viability of BIPA. The court in *Balik v. Blitt & Gaines, P.C.*, No. 14 C 8702, 2015 U.S. Dist. LEXIS 20869 (N.D. Ill. Feb. 21, 2015) addressed similar circumstances, where his *de minimus* FDCPA claim became far more viable three

face of the pleadings and facts which are subject to judicial notice, Defendant could not introduce evidence of Plaintiff's state of mind, even if it fully acknowledged the essential elements of this defense.[2] Accordingly, Defendant has utterly failed prove an essential element of this defense and therefore, Defendant's Motion must be denied to the extent that it relies on a judicial estoppel defense.

### III. THE PLAINTIFF'S 15(a) CLAIM IS RIPE FOR ADJUDICATION ON MULTIPLE GROUNDS

Plaintiff possesses multiple ripe claims under § 15(a) of BIPA. § 15(a) states, in relevant part:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, *whichever occurs first*.

740 ILCS § 14/15(a) (emphasis added).

The Seventh Circuit Court of Appeals has held that this provision imposes a "full panoply" of distinct duties, some of which are public and some of which are private, including: 1. The duty to develop a data retention policy; 2. The duty to publicly disclose a data retention policy; and 3. The duty to comply with a data retention policy. *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1149 (7th Cir. 2020) ("unlawful retention of biometric data [under § 15(a)] inflicts a privacy injury in the same sense as an unlawful collection does [under § 15(b)]."). Thus, the failure to have

---

months after he obtained a discharge. The court noted that when the bankruptcy was filed, "[t]he claim might have had little value at that point, but it cannot be said that Balik 'did not have a claim,'" however, the court refused to apply judicial estoppel, reasoning that the "180-degree turnaround in the law" that took place post-bankruptcy would render application of judicial estoppel "inequitable." *Id* at 5.

[2] See Perkinson v. Ill. State Police, No. 15-cv-526-JPG-PMF, 2016 U.S. Dist. LEXIS 45988 (S.D. Ill. Apr. 5, 2016). Plaintiff notes that only Defendant's Ripeness argument is evaluated pursuant to Rule 12(b)(1).

a data retention policy *at the time the biometric data is collected*, is a present violation of § 15(a) that is ripe for adjudication. Further, the failure to destroy Plaintiff's biometric data after the "initial purpose" for collecting same has been satisfied (i.e., his employment ended) is a separate violation of § 15(a) that is ripe for adjudication.

Defendant's argument that Plaintiff is required to wait three years to see if the Defendant decides to implement a data destruction policy, has been specifically rejected. In *Nseumen v. Dal Glob. Servs., Inc.*, No. 21 C 2630, 2021 U.S. Dist. LEXIS 195566 (N.D. Ill. 2021), the defendant argued that the plaintiff's § 15(a) claim should be dismissed because three years had not passed since he last worked for the defendant. The court rejected this argument, reasoning:

> DAL's ripeness argument doesn't make much sense. Section 15(a) says that an entity must establish guidelines for destroying biometric information once the purpose for obtaining it has been satisfied no more than three years after the individual's last interaction with the entity. But the fact that the policy has to say something about destroying information no more than three years out doesn't suggest that the entity may wait those three years to establish its policy. The obligation under section 15(a) is, under the statutory language, a current obligation that applies to any entity collecting biometric data—which Nseumen alleges DAL was already doing. Thus a claim regarding its failure to establish a retention and destruction policy involves a *current* violation, not a potential future violation.

*Nseumen*, at *5-6 (emphasis in original).

Similarly, the court in *Fleury v. Union Pac. R.R.*, No. 20-cv-00390, 2022 U.S. Dist. LEXIS 98567 (N.D. Ill. 2022) rejected a similar argument, reasoning:

> [T]he failure to develop retention and destruction policies once (or before) an entity begins retaining a person's biometric data inflicts a privacy injury in the same way that unlawful collection does. Consequently, once an entity collects a person's biometric data, the duty to develop retention and destruction policies becomes one that adheres to the person whose identifiers were collected—much the same way the duty to comply with retention/destruction policies does. This makes the duty to develop particularized in a way that the duty to publicly disclose is not. The Court finds that this approach best reflects the Seventh Circuit's holdings in *Fox* and *Bryant* and aligns with the way other judges in this circuit view the issue.

*Fleury* at 8-9 (internal citations omitted). The court in *Fleury* explained that any other interpretation of § 15(a) would make "little sense," because "such a reading would contradict the proactive approach to biometric data collection and retention that the General Assembly sought when it enacted BIPA." *Id* at 10. Thus, the court concluded that "[a]t minimum, the statute imposes the duty to develop these policies as soon as the entity possesses the biometric data." *Id* at 10 – 11; See also *Mayhall v. Amazon Web Servs., Inc.*, No. 2:21-cv-01473-TL, 2023 U.S. Dist. LEXIS 57070, at *8 (W.D. Wash. 2023) ("reading the 'when' clause to be a time trigger would subject private entities in possession of biometric identifiers or information to not only keep track of their obligation to develop a written policy on a rolling basis for each individual affected but also seemingly could allow an entity to constantly change its policy for each individual.").

In other words, the Defendant does not have *carte blanch* to implement a data destruction policy at any time within three years. It must have a data retention and destruction policy at the time biometric data is collected, and the failure to do so constitutes a present private injury. Furthermore, the actual destruction of biometric data must occur "when the initial purpose for collecting or obtaining such identifiers or information has been satisfied," even if 3 years have not passed since the last interaction with the individual. *See* § 15(a).

Plaintiff's Complaint alleges the "Defendant did not have in place a post-employment biometric retention and destruction policy *at any time during Plaintiff's employment*." Compl. ¶ 18 [Dkt. 1] (emphasis added). Plaintiff also alleges that "Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's biometric data." Compl. ¶ 60 [Dkt. 1]. Plaintiff's claim is ripe due to the Defendant's failure to *develop any* retention policy during the time it was collecting the Plaintiff's biometric data. Further, Plaintiff ceased interacting with the Defendant in June of 2022, and therefore, the "initial purpose" for collecting his biometric data has long since

passed and "occurred first" within the meaning of § 15(a). As a result, the Defendant was required to destroy the Plaintiff's biometric data long ago even though three years had not yet passed. Accordingly, Plaintiff possesses multiple ripe claims under § 15(a) and the Defendant's Motion to Dismiss should be denied to the extent it relies on a ripeness theory.

## IV.    THE PLAINTIFF PLAUSIBLY PLEADS THAT DEFENDANT DISSEMINATED HIS BIOMETRIC DATA TO ITS PAYROLL VENDOR

Defendant claims that Plaintiff's "allegations are nothing more than conclusory statements that simply regurgitate the statute" for purposes of an unlawful dissemination claim under § 15(d). Dkt. No. 13**.** In support thereof, the Defendant cites two cases: *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279 (N.D. Ill. 2019), and *Jones v. Microsoft Corp.*, 649 F. Supp. 3d 679 (N.D. Ill. 2023). However, neither of those cases involved a direct suit against the employer, as is the case here. "This difference is relevant because the same set of facts may be enough to establish liability of one defendant but not another." *Kukovec v. Estée Lauder Co.*, No. 22 CV 1988, 2022 U.S. Dist. LEXIS 202212, at *16-18 (N.D. Ill. Nov. 7, 2022) (distinguishing *Namuwonge*, because in that case, the "plaintiffs sued the third-party providers of the data-collection technology at issue—not the companies using the technology.").

*Namuwonge* involved a purely speculative allegation that a third-party technology company or device manufacturer *redisclosed* biometric data to *another* third-party, without providing any details, an identity of the recipient, or plausible explanation for doing so. *Namuwonge*, 418 F. Supp. 3d 279 (N.D. Ill. 2019) (plaintiff filed suit against Kronos Inc., and not the employer). In contrast to the somewhat nebulous claims of unexplained data sharing against a technology firm such as Kronos, the Plaintiff here presents a far more concrete scenario. This is not about data technology companies inexplicably passing around biometric data; it is about an employer potentially overstepping boundaries in a typical HR function: sharing biometric data

with a payroll service. This is a common and realistic business practice that is practically a norm in contemporary HR protocols.

Furthermore, in *Jones v. Microsoft Corp.*, 649 F. Supp. 3d 679 (N.D. Ill. 2023), the defendant was even further removed from the initial collection of biometric data than the third-party vendor in *Namuwonge*. In *Jones*, the plaintiff filed suit against Microsoft, whose involvement with the plaintiff's biometric data was limited to passively providing cloud storage to Paychex, the plaintiff's employer's 3rd-party payroll provider. *Id* at 684 - 685 ("Microsoft's situation is different. It was merely a vendor to the third-party that provided the biometric timekeeping technology and services to Jones's employer. Although several courts have extended BIPA to apply to third-party providers that supply biometric collection technology and services, no case has extended BIPA to vendors for such third-party providers."). The court dismissed the § 15(d) claim because the complaint "d[id] not allege that Microsoft disseminated her biometric data to any third-party data centers or any tangible third parties whatsoever." *Id* at 685.

The present matter is not a lawsuit against a third-party technology manufacturer or its service providers; it is a suit against Plaintiff's employer. Plaintiff alleges "[u]pon information and belief, by utilizing a biometric time clock, Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated biometric identifiers or biometric information of Plaintiff to at least its payroll vendor without obtaining the Plaintiff's consent required by 740 ILCS § 14/15(d)(1)." Compl. ¶ 85 [Dkt. 1]. Plaintiff details the time in which he was using the Defendant's biometric time clock and the frequency of such use. Dkt. No. 1 ¶¶ 11 - 21. Accordingly, Plaintiff has alleged substantial facts regarding the Defendant's dissemination of his biometric data to its payroll vendor and therefore, Defendant's Motion should be denied.[3]

---

[3] In the alternative, if the Court agrees that Plaintiff's § 15(d) violations are insufficient as pled, he requests leave to amend his Complaint to cure any deficiencies.

## V.   THE § 15(d)(2) EXEMPTION APPLIES TO "FINANCIAL TRANSACTIONS" REGULATED UNDER THE GRAMM-LEACH-BLILEY ACT

The Defendant's interpretation of § 15(d)(2) of BIPA is devoid of caselaw and would undermine the statute's entire framework. This provision exempts "financial transaction[s]." It is clear, however, that the General Assembly intended that this exemption applies only to financial transactions with "financial institutions" governed by the Gramm-Leach-Bliley Act (GLBA), 15 U.S.C. § 6801 *et seq*. See 15 U.S.C. § 6801(a), (b); 740 ILCS § 14/25(c).

The GLBA defines a "financial institution" as an entity engaged in financial activities as described in section 4(k) of the Bank Holding Company Act of 1956 (15 U.S.C. § 6809(3)(A)). The Illinois Legislature expressly exempted "financial institutions" from BIPA under 740 ILCS § 14/25(c). The stated purpose of BIPA is to regulate *other* entities such as "grocery stores, gas stations, and school cafeterias" who engage in "biometric-facilitated transactions." 740 ILCS § 14/5. Thus, the transaction from the grocery store to a VISA/MASTERCARD is exempt as completing a "financial transaction" under BIPA, but the transmission of data to the grocery store's rewards program is not. The Defendant's use of biometrics for employee timekeeping does not complete a "financial transaction" within this context. It is an administrative function that is unrelated to and would precede any transmission of data to a "financial institution" governed under the GLBA. (Plaintiff assumes the Defendant would protest any argument that it was subject to regulation under the GLBA.). Under the plain meaning of the statute, each scan *does not* "complete[] a financial transaction." 740 ILCS § 14/15(d)(2). See *William Thompson v Matcor Metal Fabrication (Illinois), Inc.*, (Case No. 2020-CH-00132, Tazwell Cnty. Dec. 7, 2023) ("To 'complete' means 'to bring to an end.' The data transfers at issue did not bring any financial transactions to an end. It is not as if every (or any) data transfer triggered a deposit into employees' bank accounts."). ***Exhibit A, attached***.

11

Accepting the Defendant's interpretation would create an untenable situation where any use of biometrics could be exempted under the guise of completing a "financial transaction." Such a reading is contrary to the legislative intent, which clearly targets the regulation of biometric data usage in a wide array of contexts. 740 ILCS § 14/5(a)-(g). Therefore, this Court should find that the Defendant, as a non-financial institution engaged in "biometric-facilitated transactions," is fully subject to the regulations and obligations imposed by BIPA. To rule otherwise would be to disregard the clear intent of the Illinois Legislature in enacting this important privacy law.

## VI. DEFENDANT IS CONFLATING THE DOCTRINE OF LACHES WITH COMMON LAW TORT DEFENSES TO LIABILITY

According to the Defendant's 'laches' theory, "[h]ad Plaintiff raised his purported concerns about the time clock during his employment, Supply Network could have investigated and ameliorated any potential risk (if any)." Dkt. No. 13 at 11. Apparently, it is Defendant's position that BIPA places the burden of compliance on consumers and employees, as if Plaintiff was required to remind his employer to ask him for informed written consent or to develop a data retention policy. This is *not* a laches theory. This is just an implied consent, assumption of risk, and contributory negligence argument masquerading as a laches theory.[4]

The 'prejudice' required to sustain a 'laches' defense refers to a detrimental change that occurs post-tort, such as the loss of critical evidence or a change in the defendant's position, which would make a defense more challenging, impractical, or unfair. *Aiardo v. Libertyville*, 184 Ill. App. 3d 653, 659, 132 Ill. Dec. 939, 944, 540 N.E.2d 861, 866 (2nd Dist. 1989) ("Laches is not merely a matter of delay; an action will be barred by Laches only if the plaintiff's unreasonable delay in

---

[4] Defendant cites an October 25, 2023 Kane County Trial Court Transcript granting a motion to dismiss a BIPA action on a similar 'laches' theory. *Norma Argueta v. Proven Partners Group, LLP,* (Case No. 2023 CH 38, Kane Cnty. Oct. 25, 2023). Plaintiff notes that a notice of appeal was filed in that case on November 21, 2023.

asserting a right or claim has prejudiced and misled the defendant, or caused the defendant to pursue a course of action different from what he would have otherwise taken."). In other words, laches is about the fairness of hearing a claim after a long delay, not about the conduct leading to the claim itself. In contrast, contributory negligence and assumption of risk argue that the Plaintiff is somehow responsible for the very harm for which he seeks damages.

Defendant does not allege that it lost critical evidence, that certain witnesses are unavailable, or that it changed its position and chose a different course of action. Indeed, the Defendant's entire laches argument is premised on the Plaintiff's failure to stop Defendant from continuing to violate BIPA.

BIPA is a strict liability statute, and as such, common law defenses, such as assumption of risk, contributory negligence, or implied consent, do not apply as a matter of law. The Illinois Supreme Court has explained that there are certain "exceptional statutes which are intended to place the entire responsibility for the harm which has occurred upon the defendant. A statute may be found to have that purpose particularly where it is enacted to protect a certain class of persons against their own inability to protect themselves." *Barthel v. Ill. C. G. R. Co.*, 74 Ill. 2d 213, 221-22, 23 Ill. Dec. 529, 533, 384 N.E.2d 323, 327 (Ill. 1978) (citing Dramshop Act; Child Labor Law; Structural Work Act; Coal Mining Act).[5] Defendant's repackaged assumption of risk

---

[5] It is well established that BIPA imposes strict liability. *Vaughan v. Biomat USA, Inc.*, No. 20-cv-4241, 2022 U.S. Dist. LEXIS 168497, at *37 (N.D. Ill. Sep. 19, 2022). "Assumption of the risk is not an available defense when a statute calls for strict liability." *Olle v. C House Corp.*, 359 Ill. Dec. 856, 860, 967 N.E.2d 886, 890 (1st Dist. 2012); *Snider v. Heartland Beef*, 479 F. Supp. 3d 762, 772 (C.D. Ill. 2020) (hesitating to "read a common law defense into a statute that plainly appears to abrogate it.") (Interpreting BIPA). "Because BIPA is a strict liability statute, the implied assumption of the risk defense is not available to BIPA defendants. Further, the statutory language makes clear that the assumption of the risk defense is not available." *Bradenberg v. Meridian Senior Living, LLC*, 564 F. Supp. 3d 627, 635 (C.D. Ill. 2021) (citations omitted).

defense/contributory negligence theory argues that it reasonably relied on its employee's failure to complain about BIPA compliance, and therefore, it fails as a matter of law.

Furthermore, even if Defendant was making an actual laches argument, it would not apply to the instant lawsuit. In order to sustain a laches defense, a defendant must prove "under all circumstances of a particular case, a plaintiff is chargeable with want of due diligence in failing to institute proceedings before he did." *Noland v. Mendoza*, 465 Ill. Dec. 334, 341, 215 N.E.3d 130, 137 (Ill. 2022) (citations and quotations omitted). Plaintiff recognizes that laches can apply when a claim is brought within the statute of limitations. However, "when a claim or right is not barred by a limitations period, laches will not apply unless *special circumstances* make it inequitable to grant the relief requested." *In re Marriage of Smith*, 347 Ill. App. 3d 395, 401, 282 Ill. Dec. 430, 435, 806 N.E.2d 727, 732 (2nd Dist. 2004) (emphasis added) (citations omitted). "When fixing the period in which rights and claims would be barred by laches, equity follows the law, and courts of equity adopt the period of limitations fixed by statute." *Id.* Thus, the Defendant must prove that the unique and 'special circumstances' of this case warrant an exception to the ordinary reliance on the statute of limitations in order to succeed on a laches defense.

This lawsuit, which is just like many other BIPA cases, presents no 'special circumstances' to justify relieving the Defendant of its burden to be compliant with BIPA within the last five years. BIPA clearly places the burden on "private entities" and not "consumers or persons." See 740 ILCS § 14/15. Defendant has completely failed to allege, let alone prove at the pleading stage, that it experienced any harm which, as a matter of law, the General Assembly has deemed solely attributable to its own conduct. Accordingly, Defendant's Motion to Dismiss should be denied to the extent it relies on a laches theory.

**VII.    PLAINTIFF IS NOT REQUIRED TO PLEAD SPECIFIC FACTS FROM WHICH TO INFER NEGLIGENCE, RECKLESSNESS, OR INTENT TO STATE A CLAIM UNDER BIPA**

Notwithstanding the Defendant's citation to the dissenting opinion in *Cothron v. White Castle Sys.*, 2023 IL 128004, 466 Ill. Dec. 85, 216 N.E.3d 918 (Ill. 2023), which has no precedential value, the two cases cited by the Defendant *do not* state that a plaintiff must allege the elements of negligence. Instead, they state that a plaintiff must prove intentional or reckless conduct to be entitled to the larger of the two liquidated damages provisions under BIPA. *Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612, 618 (N.D. Ill. 2019) ("CSX argues that Rogers has failed to adequately allege that CSX's BIPA violations were anything more than negligent."); *Namuwonge*, 418 F. Supp. 3d at 286 (specifically rejecting the defendant's argument, finding that negligence can be inferred by the plaintiff's allegation "that Kronos failed to maintain a satisfactory biometric data retention policy, despite BIPA taking effect more than ten years ago.").

Furthermore, the portion of *Rogers* that Defendant relies upon has been subject to repeated questioning by the very court that issued it. For example, in *Sosa v. Onfido, Inc.*, the court held that there is no need to allege the elements of negligence or recklessness in order to state a claim under BIPA. 600 F. Supp. 3d 859, 875 (N.D. Ill. 2022) (cases collected). In a footnote, the court explained:

> We came to a contrary conclusion in *Rogers v. CSX Intermodal Terminals, Inc.*, where we dismissed a BIPA plaintiff's "claim of intentional and reckless conduct" because he alleged in conclusory fashion that the defendant's BIPA violations were knowing and willful. But *Rogers* does not bind us. And although we strive to rule consistently from case to case, we will not hesitate to depart from a ruling in a previous case if we determine that it is appropriate to do so.  Here, several decisions that we did not consider in *Rogers* (and many of which did not issue until after *Rogers*) have convinced us that our conclusion today is the correct one. *Id* at FN 7 (internal citations omitted).

The court in *Wilk v. Brainshark, Inc.*, 631 F. Supp. 3d 522 (N.D. Ill. 2022), explained the significance of this admission:

> Brainshark relies upon *Rogers v. CSX Intermodal Terminals, Inc.*, which dismissed a BIPA claim because the complaint only included conclusory allegations about the defendant's state of mind, 409 F. Supp. 3d 612, 619 (N.D. Ill. 2019). The court that issued *Rogers*, however, later came to the opposite conclusion in *Sosa v. Onfido, Inc.*, 20-cv-4247, 600 F. Supp. 3d 859, 2022 U.S. Dist. LEXIS 74672, 2022 WL 1211506 (N.D. Ill. Apr. 25, 2022). In so doing, it explicitly acknowledged and rejected its prior reasoning in *Rogers*, noting that "several decisions that we did not consider in *Rogers* (and many of which did not issue until after *Rogers*) have convinced us that our conclusion today is the correct one." *Sosa*, 2022 U.S. Dist. LEXIS 74672, 2022 WL 1211506, at *10 n.7. In other words, the court that issued *Rogers* agreed that it had gotten it wrong. *Id.* at 531-32.

Moreover, even if Plaintiff was required to plead mental state, he has done so. See *Rogers v. BNSF Ry. C*o., 2019 U.S. Dist. LEXIS 188961, at *12 (N.D. Ill. October 31, 2019) ("BIPA took effect more than ten years ago, and if the allegations of [the] complaint are true – as the Court must assume at this stage – [defendant] has made no effort to comply with its requirements. This is certainly enough, at the pleading stage, to make a claim of negligence or recklessness plausible."); *Kyles v. Hoosier Papa Ltd. Liab. Co.*, No. 1:20-CV-07146, 2023 U.S. Dist. LEXIS 54996, at *20 (N.D. Ill. Mar. 30, 2023) ("even if the law required Plaintiff to plead Papa John's state of mind, the Complaint plausibly alleges that Papa John's acted intentionally or recklessly. Namely, it alleges that Papa John's regularly conducts business in Illinois; BIPA had been in place for over eight years when Plaintiff began working at the Ottawa restaurant; BIPA had garnered significant news attention; BIPA's requirements were well-known; and other cases like this one had been litigated and settled in employees' favor.").

The *Rogers* court, as it later admitted, got it wrong. Negligence, recklessness, and intent are not elements of a BIPA claim, but rather are terms reflecting degrees of culpability for purposes

of measuring damages should Plaintiff ultimately prevail. Defendant's Motion must therefore be denied.

## Conclusion

In conclusion, this Court should deny Defendant's Motion to Dismiss. Defendant has failed to even mention, let alone attempt to prove, that Plaintiff's omission of this lawsuit as a claim in his dismissed bankruptcy case was any other than an innocent mistake. Plaintiff's claims under § 15(a) are ripe because the Defendant did not have a data retention and destruction policy at the time it collected the Plaintiff's biometric data, and because the Defendant did not destroy his biometric data once "the initial purpose for collecting" same had been "satisfied." *Id*. Furthermore, Defendant's interpretation of § 15(d)(2) related to "financial transactions" is overly broad and not supported by case law or legislative intent. Lastly, the Defendant's reliance on the doctrine of laches and conflating it with common law tort defenses is without merit. Thus, Plaintiff respectfully requests that this honorable Court deny the Defendant's Motion to Dismiss in its entirety.

Dated: January 8, 2024                   *Respectfully submitted*,

                                          JEFFREY SCHWARTZ

                                          */s/ Samuel L. Eirinberg*

                                          Samuel L. Eirinberg
                                          Adam J. Feuer
                                          Majdi Hijazin
                                          DJC LAW, PLLC
                                          140 S. Dearborn Street, Suite 1610
                                          Chicago, Illinois 60603
                                          (872) 804-3400
                                          sam@teamjustice.com
                                          adam@teamjustice.com
                                          majdi@teamjustice.com

Nick Wooten
DJC Law, PLLC
1012 West Anderson Lane
Austin, Texas 78757
(512) 220-1800
nick@teamjustice.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing on all counsel of record by use of the Court's ECF filing system on this the 8th day of January, 2024.

/s/ Samuel L. Eirinberg
One of the Counsel for Plaintiff