UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY SCHWARTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 23 C 14319 |
| | ) | |
| SUPPLY NETWORK, INC., d/b/a VIKING SUPPLYNET, a foreign corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**CHARLES P. KOCORAS, District Judge:**

Plaintiff Jeffrey Schwartz brings this action against his former employer, Defendant Supply Network, Inc. ("Supply Network"), alleging Supply Network violated multiple sections of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* Before the Court is Supply Network's amended motion to dismiss. For the reasons set forth below, Supply Network's motion is denied.

**BACKGROUND**

The Court takes the following facts from Plaintiff's complaint and presumes them to be true for the purpose of resolving Supply Network's motion to dismiss. We draw all reasonable inferences in Plaintiff's favor.

From October 2017 through June 2022, Plaintiff worked for Supply Network as a delivery driver. During his employment, Supply Network used a time clock system

that required Plaintiff to scan his fingerprint or hand geometry to identify him so he could clock in and out of work and for breaks. The time clock system collected, used, and stored a scan of Plaintiff's fingerprint or hand geometry for purposes of time tracking and employee authentication.

Despite collecting Plaintiff's biometric information, Supply Network never obtained consent or a written release from Plaintiff for the collection, capture, storage, or use of his biometric data. By utilizing a biometric time clock, Supply Network disclosed Plaintiff's biometric information to its payroll vendor (and possibly other entities). And Supply Network never told Plaintiff why his biometric information was being collected or how long it would be stored or used, nor did Supply Network explain its biometric data retention policy or inform Plaintiff whether it would ever permanently delete his biometric data. In fact, Plaintiff does not believe that Supply Network even has a biometric data retention policy, much less a publicly available one. As a result of Supply Network's biometric data practices (or lack of them), Plaintiff alleges that he was continuously and repeatedly exposed to "risks and harmful conditions." Dkt. # 1, ¶ 42.

Based on the above, Plaintiff filed this action against Supply Network alleging multiple violations of BIPA. Supply Network now moves to dismiss the claims on a variety of grounds under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## LEGAL STANDARD

A Rule 12(b)(1) motion tests whether the Court has subject matter jurisdiction. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A plaintiff bears the burden of establishing subject matter jurisdiction in response to a defendant's Rule 12(b)(1) motion. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). Where, as here, the defendant argues that jurisdictional allegations in the complaint are inadequate, "the district court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan*, 570 F.3d at 820. "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While factual allegations are entitled to a presumption of truth, legal conclusions are not. *Iqbal*, 556 U.S. at 678–79.

## DISCUSSION

Supply Network moves to dismiss Plaintiff's complaint in its entirety, arguing that Plaintiff is judicially estopped from bringing his claims and the claims are also barred by the doctrine of laches. Supply Network also moves to dismiss Plaintiff's

Section 15(a) claim as unripe, and Plaintiff's Section 15(d) claim for failure to plausibly allege disclosure of his biometric information. We address each argument in turn.

## A. Judicial Estoppel

Supply Network first moves to dismiss all of Plaintiff's claims because he failed to disclose them in his bankruptcy case and is therefore judicially estopped from bringing them now. "Broadly speaking, judicial estoppel precludes a party from abandoning positions after they have prevailed on them in earlier litigation." *Williams v. Hainje*, 375 F. App'x 625, 627 (7th Cir. 2010) (citations omitted).

"In the bankruptcy setting, a debtor who receives a discharge by concealing the existence of a chose in action cannot wait until the bankruptcy ends and then pursue the claim." *Id.* (citation omitted); *see also Biesek v. Soo Line R. Co.*, 440 F.3d 410, 412 (7th Cir. 2006) ("Plenty of authority supports the district judge's conclusion that a debtor in bankruptcy who receives a discharge (and thus a personal financial benefit) by representing that he has no valuable choses in action cannot turn around after the bankruptcy ends and recover on a supposedly nonexistent claim."); *Cannon-Stokes v. Potter,* 453 F.3d 446, 448 (7th Cir. 2006). In other words, when a debtor files for bankruptcy without listing a potential claim and then files a federal lawsuit, the failure to disclose the claim usually bars the debtor from pursuing the claim. *Metrou v. M.A. Mortenson Co.*, 781 F.3d 357, 358 (7th Cir. 2015). "Courts do not apply judicial estoppel for the benefit of the defendant but try to protect courts and creditors from deception and manipulation." *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 547 (7th

Cir. 2014).  It is an "equitable doctrine intended to induce debtors to be truthful in their

bankruptcy filings." *Id.* (cleaned up).

Plaintiff filed for Chapter 13 bankruptcy on March 13, 2019.  Case No. 19-06979

(Bankr. N.D. Ill.), Dkt. # 1.  In his voluntary petition for bankruptcy, Plaintiff did not

disclose any claims against Supply Network.  And, at no time before the bankruptcy

case was closed did Plaintiff amend his bankruptcy petition to include claims against

Supply Network—claims he now asserts are potentially worth over $1 million dollars.[1]

On October 4, 2022, the bankruptcy trustee filed a motion to dismiss the

bankruptcy case for failure to make plan payments.  Bankr. Dkt. # 84.  On December 5,

2022, the bankruptcy court granted that motion and entered an order stating that the

case was dismissed for "material default" under 11 U.S.C. § 1307(c)(6).  Bankr. Dkt.

# 91.  On March 29, 2023, the trustee filed the Chapter 13 Final Report and Account.

Bankr. Dkt. # 94.  On March 30, 2023, the bankruptcy case was closed and the trustee

discharged.  Bankr. Dkt. # 95.

Plaintiff filed this action against Supply Network on September 29, 2023.

Supply Network filed its motion to dismiss raising the judicial estoppel argument on

November 27, 2023.[2]  On December 11, 2023, counsel filed a motion to reopen the

---

[1] Plaintiff is seeking statutory damages of $1,000 to $5,000 for each violation of BIPA and alleges that there were more than 1,000 violations.  *See* Dkt. # 1, ¶¶ 5, 21, 79, 90.

[2] According to defense counsel, approximately one month before the motion to dismiss was filed, defense counsel emailed Plaintiff's counsel regarding the failure to disclose Plaintiff's claims in the bankruptcy petition or at any time thereafter.

bankruptcy case. Bankr. Dkt. # 96. That motion was granted one week later, on December 18, 2023, and the case was reopened. Bankr. Dkt. # 102. Counsel filed amended disclosures the next day, and a trustee was appointed. Bankr. Dkt. # 103; Bankr. Dkt. # 104. On March 25, 2024, the trustee docketed, "Having reviewed the documents filed after the reopening of the case, there will be no further administration." Bankr. Dkt. # 105. The bankruptcy case was again closed and the trustee discharged that same day. Bankr. Dkt. # 106.

Plaintiff argues that the reopening of the bankruptcy case mooted Supply Network's judicial estoppel defense. Not so; an amended disclosure does not automatically give a debtor a free pass. *See*, *e.g.*, *Novotny v. Plexus Corp.*, 777 F. App'x 164, 165 (7th Cir. 2019) (affirming the entry of summary judgment against the plaintiff-debtor based on judicial estoppel, even though he "moved to reopen his bankruptcy so that he could amend his disclosure of assets to add his discrimination claims from this lawsuit"); *Douglas v. I.Q. Data Int'l, Inc.*, 2021 WL 2000282, at *3–4 (N.D. Ill. 2021) (dismissing a case on judicial estoppel grounds despite a belated disclosure to the bankruptcy court); *Hernandez v. Forest Pres. Dist. of Cook Cnty.*, 2010 WL 1292499, at *5 (N.D. Ill. 2010) ("District courts in this circuit likewise have concluded that the doctrine of judicial estoppel applies despite the plaintiff's effort to amend his bankruptcy schedule."); *Bland v. Rahar*, 2008 WL 109388, at *3 (C.D. Ill. 2008) (finding that it "does not matter" that the debtor "quickly moved to amend his bankruptcy disclosures"); *Wiggins v. Citizens Gas & Coke Util.*, 2008 WL 4530679, at

*3 (S.D. Ind. 2008) ("The cases are uniform that corrective action taken only after being 'caught' and compelled to do so by one's opponent is too late; it is not a defense to the application of judicial estoppel.").

Plaintiff claims that the failure to disclose was inadvertent; he did not intend to deceive the bankruptcy court. Supply Network, on the other hand, says that "[it] is impossible to believe that Plaintiff overlooked what he contends is such a sizable claim that was central to his daily employment activities for the more than four years his bankruptcy case was pending." Dkt. # 13, at 6. Furthermore, Supply Network says, "it is reasonable for the Court to infer from Plaintiff's actions that he would not have taken steps to re-open his bankruptcy proceedings but-for the filing of Defendant's motion to dismiss, which evidences an intent to deceive." Dkt. # 22, at 5. Plaintiff, in response, argues that Supply Network offered no evidence of intent, and therefore "the Court is obligated to draw the reasonable and obvious inference that the Plaintiff's omission of this claim from his bankruptcy case was completely innocent and inadvertent, and that Plaintiff likely had no idea what BIPA even was until he was in communication with his present counsel." Dkt. # 18, at 5.

The Seventh Circuit has held that intent to deceive is a necessary ingredient of judicial estoppel arising from a failure to disclose a legal claim during a bankruptcy proceeding. *See Spaine*, 756 F.3d at 548 ("If there were undisputed evidence that Spaine intentionally concealed her claim, we would [apply judicial estoppel]."). While the timing of Plaintiff's lawsuit and his amendment in the bankruptcy court may be

suspect, at this stage of the litigation the Court draws all reasonable inferences in Plaintiff's favor. *See Rogers v. Ford Motor Co.*, 2015 WL 2097679, at *4 (N.D. Ill. 2015) ("[T]he timing and nature of the disclosure, by themselves, fail to establish that [plaintiff] engaged in deception and manipulation of the bankruptcy court proceedings to gain a benefit in this subsequent . . . litigation action."). Viewing the present record through the Rule 12(b)(6) lens, application of judicial estoppel is not warranted. This order, however, does not preclude Supply Network from reasserting the estoppel defense at the summary judgment stage if warranted by what is borne out in discovery. *See Ware v. Harvey Auto Credit, LLC*, 2017 WL 2404947, at *2 (N.D. Ill. 2017).

**B. Laches**

Next, Supply Network argues that Plaintiff's BIPA claims are barred by the doctrine of laches, which derives from the maxim that "those who sleep on their rights, lose them." *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 792 (7th Cir. 2002). It is an affirmative defense on which the asserting party bears the burden of proof. *Safety Socket LLC v. Relli Tech., Inc.*, 2023 WL 3455117, at *3 (N.D. Ill. 2023) (citing *Bauer v. J.B. Hunt Trans., Inc.*, 150 F.3d 759, 763 (7th Cir. 1998)). Because a complaint need not anticipate or overcome affirmative defenses such as the statute of limitations, courts may only rule on affirmative defenses on a Rule 12(b)(6) motion when the plaintiff pleads himself out of court by disclosing the basis in his complaint. *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008); *Hollander v. Brown*, 457 F.3d 688, 691 (7th Cir. 2006).

Laches requires proof of two elements: (1) unreasonable delay and (2) prejudice to the other party. *Teamster & Emp'rs Welfare Tr. of Ill. v. Gorman Bros. Ready Mix*, 283 F.3d 877, 880 (7th Cir. 2002). "[A] district court's decision to apply the doctrine of laches is discretionary." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 934 (7th Cir. 2008) (citation omitted). Viewing the complaint's allegations in the light most favorable to Plaintiff, the Court finds that he has not pleaded himself out of court by alleging an unreasonable delay. To the contrary, Plaintiff filed his BIPA claims well within the statute of limitations, and less than three years after he terminated his employment with Supply Network. Under the circumstances, the Court cannot conclude with certainty that Plaintiff's delay in bringing his BIPA claims was unreasonable. *See Sloat v. Camfil USA, Inc.*, 2024 WL 1556268, at *5 (N.D. Ill. 2024).

Supply Network cites an unreported decision by the Sixteenth Judicial Circuit Court, Kane County, Illinois, *Arguenta v. Proven Partners Group, LLP*, in which the court dismissed BIPA claims on laches grounds. *See* Dkt. # 13-1; Dkt. # 13-2. But Illinois circuit court decisions are not binding on this Court, and the facts of *Arguenta* as described in the hearing transcript attached to Supply Network's motion to dismiss are distinct. The plaintiff in *Arguenta* apparently signed a BIPA-compliant consent form early in her employment with the defendant. Despite acquiescing to the collection of her biometric information, she brought suit five years later. In this case, however, Plaintiff does not allege (nor does Supply Network contend) that he signed a BIPA-compliant consent form at any time. "There is nothing in the complaint indicating when

[Plaintiff] became aware that [Supply Network's] collection of his biometric identifiers potentially violated BIPA." *Sloat*, 2024 WL 1556268, at \*5. Because unreasonable delay is not apparent from the face of the complaint, the Court denies Supply Network's motion to dismiss based on laches. *See id*.

### C. Ripeness

Supply Network next moves to dismiss Plaintiff's Section 15(a) claim, arguing the claim is not yet ripe because it has not been three years since Plaintiff left the company. The ripeness doctrine "arises out of [Article III's] case or controversy requirement," and its "underlying objective is to avoid premature adjudication and judicial entanglement in abstract disagreements." *Church of Our Lord & Savior Jesus Christ v. City of Markham*, 913 F.3d 670, 676 (7th Cir. 2019) (internal citations omitted). If a claim is unripe, the Court must dismiss it because "[f]ederal courts lack jurisdiction to consider an unripe claim." *Kathrein v. City of Evanston*, 636 F.3d 906, 915 (7th Cir. 2011).

Section 15(a) has two requirements. First, Section 15(a) requires a private entity to develop a publicly available, written policy establishing a retention schedule and guidelines for permanently destroying an individual's biometric data "when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a). And second, the private entity must also comply with its established policy.

Supply Network does not dispute that a claim for Supply Network's failure to develop and publicly disclose a data retention policy is ripe for adjudication. Rather, Supply Network says a claim for unlawful retention or failure to comply with a retention policy is unripe. Supply Network contends that because Plaintiff alleges Supply Network does not have a policy setting forth a purpose for collecting his biometric data, under the statute, Supply Network could retain that information for up to three years after Plaintiff's employment with Supply Network ended (in June 2022).

The Court is not persuaded that Plaintiff's Section 15(a) claim is unripe simply because three years have not passed since his employment with Supply Network ended. Again, Section 15(a) provides that an individual's biometric data must be destroyed when "[t]he initial purpose for collecting or obtaining such identifiers or information has been satisfied *or* within 3 years of the individual's last interaction with the private entity, *whichever occurs first*." 740 ILCS 14/15 (emphasis added). Plaintiff alleges Supply Network obtained his biometric data "for timekeeping purposes" so he could "clock in and [out] of work and for breaks." Dkt. # 1, ¶¶ 12–13. Thus, once Plaintiff left the company, the "initial purpose" for collection of his biometric data had been satisfied. And Plaintiff explicitly alleges that Supply Network did not delete his biometric information at that time. *See Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1149 (7th Cir. 2020) (only two years had passed since the plaintiff ended her employment, but the plaintiff alleged "a concrete and particularized invasion of her privacy interest in her biometric data stemming from [the defendant's] violation of the

11

full panoply of its section 15(a) duties—the duties to develop, publicly disclose, *and comply with* data retention and destruction policies—resulting in the wrongful retention of her biometric data after her employment ended, beyond the time authorized by law.") (emphasis in original); *Sloat*, 2024 WL 1556268, at *3 (even though three years had not passed, "Sloat alleges that Camfil unlawfully retained his biometric information and failed to destroy it even after the 'initial purpose' for obtaining that information— 'timekeeping and payroll'—had been accomplished due to his departure from the company. These allegations are sufficient to establish injury-in-fact.")

Plaintiff's allegation of unlawful retention distinguishes his case from others in which Section 15(a) claims have been dismissed on ripeness grounds. *See Horn v. Method Prod., PBC*, 2022 WL 1090887, at *4 (N.D. Ill. 2022) (the plaintiff did not allege the defendant unlawfully retained his biometric information—"And while Horn's claim for the failure to develop and disclose a retention policy is ripe, Horn does not have standing to pursue a [Section 15(a)] claim in federal court without also contending that [the defendant] *unlawfully retained* his biometric information.") (emphasis added). Plaintiff's complaint plausibly alleges that Supply Network unlawfully retained his biometric information. *See Sloat*, 2024 WL 1556268, at *3.

### D. Disclosure

Supply Network next moves to dismiss Plaintiff's Section 15(d) claim for failure to allege disclosure of his biometric data. In this regard, Plaintiff alleges, "[u]pon information and belief, by utilizing a biometric time clock, Defendant systematically

and automatically disclosed, redisclosed, or otherwise disseminated biometric identifiers or biometric information of Plaintiff to at least its payroll vendor without obtaining the Plaintiff's consent[.]" Dkt. # 1, ¶ 85.  Supply Network says Plaintiff's allegations are "nothing more than conclusory statements that simply regurgitate[] the statute." Dkt. # 13, at 8–9.

Although pleaded "upon information and belief," the complaint sufficiently alleges Supply Network disseminated Plaintiff's biometric data in violation of Section 15(d).  All Plaintiff must plead is "plausible dissemination," *Cothron v. White Castle Sys., Inc.*, 467 F. Supp. 3d 604, 618 (N.D. Ill. 2020); he is not required to include "detailed factual allegations" in his complaint, *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013).  Plaintiff need only "give enough details about the subject-matter of the case to present a story that holds together."  *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).  Plaintiff has done so here.  Plaintiff has alleged that Supply Network implemented a timekeeping system that collected his biometrics and then shared them (without his consent) with its payroll vendor.  *See Wordlaw v. Enter. Leasing Co. of Chi., LLC*, 2020 WL 7490414, at *4 (N.D. Ill. 2020) (finding allegations of disclosure based upon "information and belief" sufficient); *Naughton v. Amazon.com, Inc.*, 2022 WL 19324, at *4 (N.D. Ill. 2022) (plaintiff pleaded "plausible dissemination" by alleging that Amazon collected his biometric information and disclosed that information to "other Amazon entities" and "third-party biometric device and software vendor(s).").

13

Supply Network contends that even if Plaintiff plausibly alleges disclosure, dismissal of his Section 15(d) claim is still warranted because any alleged disclosure to Supply Network's payroll vendor falls under one of the exceptions set forth in Section 15(d)(2). Section 15(d)(2) permits disclosure of an individual's biometric data if "the disclosure or redisclosure completes a financial transaction requested or authorized" by that individual. 740 ILCS 14/15(d)(2). Supply Network argues any disclosure to a payroll vendor would have been to effect a financial transaction authorized by Plaintiff—"specifically, paying Plaintiff for his work, which he accepted in a form of wages[.]" Dkt. # 13, at 9.

Plaintiff argues this exception does not apply and that each scan does not "complete" a financial transaction.[3] Supply Network disagrees; it argues that it "defies logic to imagine that an alleged disclosure to a *payroll* vendor for purposes of *paying* Plaintiff for his work does not 'complete a financial transaction requested or authorized' by Plaintiff within the context of BIPA." Dkt. # 22, at 10 (emphasis in original). However, Supply Network does not provide any authority in support of its position.

In the Court's view, "[t]he plain reading of the 'financial transaction' exception defeats [Supply Network's] argument because the disclosure of the biometric

---

[3] Plaintiff also argues that the financial transaction exception only applies to financial transactions with "financial institutions" governed by the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. § 6801 *et seq. See* Dkt. # 18, at 17 (citing 740 ILCS 14/25(c) ("Nothing in this Act shall be deemed to apply in any manner to a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 and the rules promulgated thereunder.")). We need not address this argument.

information must be *requested* or *authorized* by the subject of the biometric information, namely, [Plaintiff], who unequivocally alleges [he] did not provide [his] consent." *Mahmood v. Berbix, Inc.*, 2022 WL 3684636, at *3 (N.D. Ill. 2022). Contrary to what Supply Network would have the Court believe, the fact that Plaintiff accepted payment of his wages does not mean he requested or authorized dissemination or disclosure of his biometric data. And common sense tells us that each scan of Plaintiff's fingerprint would not trigger a deposit into a bank account or the issuance of a paycheck—under the plain language of the statute, each scan does not complete a financial transaction.

### E. Intentional, Reckless, or Negligent Conduct

Finally, Supply Network argues that Plaintiff cannot plausibly state a claim for damages because he fails to allege any facts that plausibly establish that Supply Network acted with the requisite intent. Courts in this District have reached conflicting outcomes as to whether a complaint must set forth detailed allegations regarding a defendant's state of mind to state a claim under BIPA. A minority of courts have treated BIPA's four damages categories as separate claims for relief and have dismissed theories of intentional or reckless conduct under Rule 12(b)(6) where the complaint fails to plausibly allege facts regarding the defendant's state of mind. *See Sloat*, 2024 WL 1556268, at *4 (collecting cases).

However, we agree with the majority approach. *See id.* (collecting cases). The remedies Plaintiff seeks are distinct from Plaintiff's underlying BIPA claim. Supply

Network's state of mind "has no bearing on the plausibility of Plaintiff's alleged BIPA claims themselves but will merely determine what damages Plaintiff may recover for any BIPA violation." *See Kyles v. Hoosier Papa LLC*, 2023 WL 2711608, at *7 (N.D. Ill. 2023). In other words, Supply Network's state of mind relates only to what relief Plaintiff may seek if he establishes a BIPA violation. *Id.* Plaintiff, therefore, is not required to plead facts showing negligence, recklessness, or intentional conduct to state a BIPA claim. *See Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 875 (N.D. Ill. 2022) (collecting cases).

## CONCLUSION

For the foregoing reasons, Supply Network's Amended Motion to Dismiss [11] is denied. A telephonic status hearing is set for 5/30/2024 at 10:05 a.m.

It is so ordered.

_____
Charles P. Kocoras
United States District Judge

Date: May 1, 2024

16