**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **JEFFREY SCHWARTZ**, <br><br> Plaintiff, <br><br> vs. <br><br> **SUPPLY NETWORK, INC., d/b/a Viking SupplyNet**, a foreign corporation, <br><br> Defendant. | Case No.: 1:23-cv-14319 <br><br> Honorable Charles P. Kocoras |

**PLAINTIFF'S SUR-RESPONSE
IN OPPOSITION TO DEFENDANT'S MOTION TO STAY PROCEEDINGS**

Plaintiff, Jeffrey Schwartz ("Plaintiff"), by and through counsel, and for his Sur-Response in Opposition to the Defendant, Supply Network, Inc.'s ("Defendant") Motion to Stay Proceedings, states as follows:

**I. SB 2979 IS PROSPECTIVE ONLY BECAUSE IT IS INTENDED TO ABROGATE *COTHRON***

Assuming Governor Pritzker signs Senate Bill 2979 into law, this legislation can have *no impact* whatsoever on the present lawsuit. ("SB 2979"). The primary purpose of SB 2979 is to abrogate *Cothron v. White Castle Systems*, 2023 IL 128004, 466 Ill. Dec. 85, 216 N.E.3d 918 (Ill. 2023). In particular, SB 2979 accomplishes its goal by eliminating the right to seek redress for multiple, distinct "violations" that previously could each give rise to separate and independent legal actions.

In *Cothron v. White Castle Systems, Inc.*, 2023 IL 128004, the Illinois Supreme Court definitively answered a certified question from the Seventh Circuit Court of Appeals regarding the accrual of claims under BIPA. The certified question asked: "Do section 15(b) and 15(d) claims accrue each time a private entity scans a person's biometric identifier and each time a private entity

1

transmits such a scan to a third party, respectively, or only upon the first scan and first transmission?" *Cothron v. White Castle System, Inc.*, 20 F.4th 1156, 1167 (7th Cir. 2021). The Illinois Supreme Court answered the question, holding, in no uncertain terms, that "a separate claim accrues under the Act each time a private entity scans or transmits an individual's biometric identifier or information in violation of section 15(b) or 15(d)." *Id*. The Court explained that "the statutory language clearly supports" the plaintiff's position that "a party may recover for 'each violation,' allowing multiple or repeated accruals of claims by one individual."[1] *Cothron*, 2023 IL 128004 at ¶ 40.

The opinion was not without controversy. Three Justices, Overstreet, Theis, and White dissented. They argued that the Court "should answer the certified question by saying that a claim accrues under Section 15(b) or 15(d) of [BIPA] only upon the first scan or transmission." *Id*. at ¶ 48. Their reasoning included that "subsequent scans [do] not collect any new information from plaintiff, and she suffered no additional loss of control over her biometric information" as a result, *id*. ¶ 52, and that "[i]f a new claim accrues with each scan . . . violators face potentially crippling liability." *Id*. ¶ 61 (quoting *Cothron v. White Castle Sys.*, 20 F.4th 1156, 1165 (7th Cir. 2021)). The majority, however, "[u]ltimately . . . continue[d] to believe that policy-based concerns about potentially excessive damage awards under [BIPA] are best addressed by the legislature" and "respectfully suggest[ed] that the legislature review these policy concerns and make clear its intent **regarding the assessment of damages** under [BIPA]." *Id*. ¶ 43 (emphasis added).

Yet, SB 2979 does not heed the invitation to clarify the criteria for assessing damages. The proposed amendatory text of SB 2979 makes no change whatsoever to the standards for the

---

[1] Notwithstanding Defendant's reference to statements made by *Cothron*'s class counsel in a Motion for Final Approval of Class Action Settlement

2

"assessment of damages." [2] Instead, the General Assembly expressed its disagreement with the central holding of *Cothron* by seeking to terminate a party's right to multiple claims. The Amendment if enacted would not replace any of BIPA's existing relevant text. It would place the current in force 740 ILCS 14/20 within a subsection (a) and enact a new subsection (b) for this section. Specifically, SB 2979 would amend BIPA, *inter alia*, as follows (the underlined portion being the amendatory text):

>(a) Any person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in federal district court against an offending party. A prevailing party may recover for each violation:
>
>>(1) against a private entity that negligently, violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;
>>
>>(2) against a private entity that intentionally or, recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater;
>>
>>(3) reasonable attorneys' fees and costs, including, expert witness fees and other litigation expenses; and
>>
>>(4) other relief, including an injunction, as the, State or federal court may deem appropriate.
>
>(b) For purposes of subsection (b) of Section 15, a private entity that, in more than one instance, collects, captures, purchases, receives through trade, or otherwise obtains the same biometric identifier or biometric information from the same person using the same method of collection in violation of subsection (b) of Section 15 **has committed a single violation of subsection (b) of Section 15 for which the aggrieved person is entitled to, at most, one recovery under this Section**.
>
>(c) For purposes of subsection (d) of Section 15, a private entity that, in more than one instance, discloses, rediscloses, or otherwise disseminates the same biometric identifier or biometric information from the same person to the same recipient using the same method of collection in violation of subsection (d) of Section 15 **has committed a single violation of subsection (d) of Section 15 for which the aggrieved person is entitled to, at most, one recovery under this Section** regardless of the number of times the private entity disclosed, redisclosed, or

---

[2] Notwithstanding what a member of the General Assembly may have implied a reporter for the Chicago Tribune in an interview.

<u>otherwise disseminated the same biometric identifier or biometric information of the same person to the same recipient.</u> [3]

As highlighted above, the Amendment's plain language would expressly abrogate (repeal and replace) each of the *Cothron* decision's separate conclusions that (1) a separate BIPA violation *occurs* with each scan or transmission, (2) a separate BIPA violation *accrues* with each scan or transmission, and (3) a BIPA plaintiff may recover liquidated damages for each scan or transmission. In other words, SB 2979 leaves wholly untouched the discretionary award of damages for each violation that the *Cothron* Court invited it to clarify, and instead seeks to undermine its central holding. [4]

Because SB 2979 does not merely impact procedural rules or modify any remedies, but instead seeks to eliminate entire categories of vested claims that were established in *Cothron*, it cannot be applied retroactively. Consequently, SB 2979 can have no impact whatsoever on the present lawsuit.

### A. SB 2979 Is Intended To Abrogate Vested Rights Established In *Cothron*

The Plaintiff's BIPA claims accrued—and the Complaint was filed—prior to the SB 2979 amendment. "[T]he general rule is that statutory changes are presumed to be prospective . . . ." *Ores v. Kennedy*, 218 Ill. App. 3d 866, 871 (1st Dist. 1991) (citing authorities). "[T]he presumption of prospectivity can be rebutted by demonstrating that the amendment merely affects procedural matters." *Id*. "A procedural change in law generally prescribes methods of enforcing rights and

---

[3] Full Text of SB 2979, 740 ILCS 14/20, 103rd General Assembly, available at https://www.ilga.gov/legislation/fulltext.asp?DocName=&SessionId=112&GA=103&DocTypeId=SB&DocNum=2979&GAID=17&LegID=152094&SpecSess=&Session= (accessed 7/9/2024) (emphasis added in bold).

[4] If instead, for example, the General Assembly had passed an amendment setting forth several factors for the trier of fact to consider when exercising discretion, such an amendment could arguably be clarifying of existing law and applied retroactively.

4

embraces pleading, evidence and practice, i.e., legal rules which direct the means to bring parties into court or the manner in which the court process shall proceed. It facilitates suit against a party." *Id*. "In contrast, a substantive change in law establishes, creates, defines or regulates rights, and thus could actually '"make[] one a party to a suit." *Id*.; *see also GreenPoint Mortg. Funding, Inc. v. Poniewozik*, 2014 IL App (1ˢᵗ) 132864, ¶ 18 (1st Dist. 2014).

The Amendment, if applied retroactively to Plaintiff, would impermissibly "interfere with a vested right" or would "take[] away or impair[] vested rights acquired under existing laws, . . . or attach[] a new disability in respect of transactions or considerations already past . . . ." *Dardeen v. Hartland Manor, Inc.*, 186 Ill. 2d 291, 295-96 (Ill. 1999). "Vested rights are interests that are protected from legislative interference by our due process clause (Ill. Const. 1970, art. I, § 2)." *Id*. "Although whether a particular expectation rises to the level of a vested right is not capable of precise definition, a right has not vested until it is so far perfected that it cannot be taken away by legislation, and so complete and unconditional that it may be equated with a property interest." *Id*. at 295-96 (internal quotation marks and citation omitted).

To determine whether an amendment can be applied retroactively, the court "first consider[s] whether the legislature stated an explicit intent about retroactivity. If the legislative intent is unclear, then [the court] determines whether the amendment is procedural or substantive in nature. Statutory amendments and repeals that are procedural may be applied retroactively, while those that are substantive may not." *Greenpoint*, at ¶ 15 (internal citations omitted); See also *Commonwealth Edison Co. v. Will Cnty. Collector*, 196 Ill. 2d 27, 255 Ill. Dec. 482, 749 N.E.2d 964 (Ill. 2001) (adopting the *Landgraf* test) (citing *Landgraf v. Usi Film Prods.*, 511 U.S. 244, 114 S. Ct. 1483 (U.S. 1994)).

SB 2979 does not indicate its temporal reach. Instead, it states**, "Effective date. This Act takes effect upon becoming law."** Full Text of SB 2979, 740 ILCS 14/20, 103rd General Assembly, § 99 (emphasis added). The statute at issue in *Greenpoint* was the same in this regard, it too provided that "[o]nce it passed, the law became effective immediately . . . [but did] not clearly indicate whether the legislature intended for the law to be retroactive or prospective." *Greenpoint* at ¶ 17. "As a result," the *Greenpoint* court proceeded "to the next step in [the] analysis— determining whether [the amendment] is procedural or substantive." *Id*. This Court should proceed in the same manner.

SB 2979 clearly would affect a substantive change in law. In *Dardeen*, the Court held "that the amendment to [the law at issue] repealing the treble damages provision is related solely to a remedy and does not affect a vested right." *Id*. at 298-99. It noted that "[i]t has been well settled for over a century that, prior to judgment, a plaintiff has no vested right to a particular method of procedure or remedy such as the treble damages authorized under the former section . . . of the Act." *Id*. at 299. The Court also observed that previously, it had "specifically held that a plaintiff has no vested right to exemplary, punitive, vindictive or aggravated damages." Therefore, the Court determined, that "[b]ecause no vested right is affected, the application of the amended version of [the law at issue] to plaintiff's pending suit is proper, irrespective of when the cause of action accrued or the complaint was filed." *Id*. Here, by contrast, SB 2979 does not clarify or modify BIPA's liquidated damages remedy at all, leaving those provisions entirely untouched. *See* Sec. I, *supra.*

The Plaintiff in this case asserts *multiple* BIPA violations, each of which under existing law—*standing alone*—supports a fully-formed, distinct and independent cause of action under

6

Section 20 of BIPA. [5] Indeed, each separate scan, and each separate transmission can independently make the Plaintiff and Defendant a party to this lawsuit for each separate violation-claim. *Ores*, 218 Ill. App. 3d 866 at 871 (Explaining that a substantive change in the law is one that could actually "make one a party to a suit.") (citations and quotations omitted). Given that Plaintiff's BIPA claims, as well as the filing of the Complaint, predate the SB 2979 amendment, the amendment's application is not permissible in this case. It would effectively divest the Plaintiff of multiple fully formed and vested causes of action, thereby resulting in a prohibited retroactive impact.

## II.     THE PROPOSED AMENDMENT IS NOT "CLARIFYING OF EXISTING LAW"

To the extent the Defendant seeks to circumvent the *Landgraf* analysis and argue that SB 2979 is merely clarifying of existing law, this argument should be rejected. The presumption is that a statutory amendment is intended to *change* existing law, not clarify it. *People v. Stewart*, 2022 IL 126116, ¶ 20, 465 Ill. Dec. 547, 553, 215 N.E.3d 752, 758 (Ill. 2022). Although this presumption of legislative intent is not controlling, there is absolutely no conceivable basis to conclude that SB 2979 is intended to clarify existing law. *Id*. Courts look to several factors to determine whether an amendment is a substantive change or merely a clarification, namely: whether there is an express declaration that the enactment is clarifying of existing law, whether there is a conflict or ambiguity identified in the appellate courts, and whether the amendment is consistent with a reasonable interpretation of the pre-amendment statute. *K. Miller Constr. Co. v. McGinnis*, 238 Ill. 2d 284, 299, 345 Ill. Dec. 32, 42, 938 N.E.2d 471, 481 (Ill. 2010) (citing *Middleton v. City of Chicago*, 578 F.3d 655, 663-64 (7th Cir. 2009)).

---

[5] Section 20 of BIPA provides "a right of action . . . for each violation" of BIPA. 740 ILCS 14/20.

SB 2979 does not declare that it is clarifying existing law, and there are no conflicting appellate decisions to resolve as the Illinois Supreme Court's opinion in *Cothron* is the final authority on the matter. See *Stewart*, 2022 IL 126116, ¶ 21, (explaining that the existence of conflicting appellate court decisions can negate the presumption that the legislature intended to change existing law).

Furthermore, there is no ambiguity that is clarified by SB 2979. In *Cothron*, the court determined that there was an independent claim for each scan or transmission based on "the plain language of sections 15(b) and 15(d)." *Id*. at ¶ 45. Thus, the Court left zero ambiguity as to whether each scan or transmission constitutes a separate violation under the Act. Finally, for the same reason, SB 2979 is inconsistent with any pre-existing reasonable interpretation of BIPA, as its central purpose is to overturn the definitive authority on its interpretation. Accordingly, SB 2979 is not intended to clarify *Cothron*, but to abrogate it.

A. **The General Assembly Cannot *Retroactively* Overturn Judicial Interpretations of the Highest Court**

It is well established that "[w]hile the General Assembly can pass legislation to prospectively change a judicial construction of a statute if it believes that the judicial interpretation was at odds with legislative intent, it cannot effect a change in that construction by a later declaration of what it had originally intended." *Bates v. Bd. of Educ., Allendale Cmty. Consol. Sch. Dist. No. 17*, 136 Ill. 2d 260, 267, 144 Ill. Dec. 104, 106-07, 555 N.E.2d 1, 3-4 (Ill. 1990); *See also Rivers v. Roadway Express*, 511 U.S. 298, 306-07, 114 S. Ct. 1510, 1516 (U.S. 1994) (amendment is not clarifying of statutory intent even where an amendment "reflects congressional disapproval" of "incorrectly decided" judicial interpretation). The reason for this prohibition lies in the Illinois State Constitution and the separation of powers it embodies:

> The General Assembly's subsequent declaration of prior intent cannot alter the clear import of the prior statutory language. . . The General Assembly's declaration that the amendatory act applies to events which occurred before the effective date of the amendatory statute represents a legislative attempt to retroactively apply new statutory language and to thereby annul a prior decision of this court. This is an assumption by the General Assembly of the role of a court of last resort in contravention of the principle of separation of powers embodied in article II, section 1, of the Illinois Constitution of 1970, which provides: "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." While the General Assembly has the power to draft legislation and to amend statutes prospectively if it believes that a judicial interpretation was at odds with its intent, it is the function of the judiciary to determine what the law is and to apply statutes to cases. The cases cited by the State do not recognize that the General Assembly may retroactively overrule a decision of a reviewing court. Instead they recognize only the power of the legislature to establish laws prospectively and to alter for future cases interpretations of statutes by reviewing courts.

*Roth v. Yackley*, 77 Ill. 2d 423, 428-29, 33 Ill. Dec. 131, 133, 396 N.E.2d 520, 522 (Ill. 1979) (internal citations omitted).

This principle has been reaffirmed by the Illinois Supreme Court on multiple occasions.[6] Because the purpose of SB 2979 is to abrogate the Illinois Supreme Court in *Cothron*, it cannot be applied retroactively without violating the Illinois State Constitution and the principle of the separation of powers. Accordingly, SB 2979 cannot be applied retroactively.

**Conclusion**

SB 2979 represents a significant and substantive departure from the law established in *Cothron*, directly seeking to undercut the central holding that claims under BIPA accrue with each

---

[6] *People v. Rink*, 97 Ill. 2d 533, 541, 74 Ill. Dec. 34, 38, 455 N.E.2d 64, 68 (Ill. 1983) ("Of course, the legislature, after a final judicial interpretation of legislative intent, cannot effect a change in that construction by a later declaration of what it did intend."); *In re Marriage of Cohn*, 93 Ill. 2d 190, 204, 66 Ill. Dec. 615, 622, 443 N.E.2d 541, 548 (Ill. 1982) ("the legislature invaded the province of the judiciary by retroactively overruling a decision of a reviewing court. This constitutes a violation of article II, section 1, of the Illinois Constitution, which embodies the principle of separation of powers."); *Ill. Bell Tel. Co. v. Fair Emp't Practices Com.*, 81 Ill. 2d 136, 142, 41 Ill. Dec. 41, 43, 407 N.E.2d 539, 541 (Ill. 1980) ("a legislative body cannot retroactively effectuate a change in statutory language by issuing a declaration of prior intent."); *Hamilton Cnty. Tel. Coop. v. Maloney*, 151 Ill. 2d 227, 233-34, 176 Ill. Dec. 62, 64-65, 601 N.E.2d 760, 762-63 (Ill. 1992).

biometric scan or transmission. This amendment, if applied retroactively, would divest Plaintiff of multiple, independent and fully formed claims. Furthermore, SB 2979 neither resolves a conflict within the appellate courts nor clarifies any existing ambiguity. Consequently, SB 2979 does not serve to clarify existing law. Finally, because SB 2979 is intended to abrogate Illinois Supreme Court precedent, it cannot be applied retroactively without impermissibly violating the separation of powers principles enshrined in the Illinois State Constitution. Accordingly, SB 2979, if passed, can have no impact whatsoever on the present lawsuit.

*Respectfully submitted,*

*/s/ Samuel L. Eirinberg*
Majdi Hijazin - # 6284879
Adam J. Feuer - # 6307792
Samuel L. Eirinberg - # 6328842
DJC Law, PLLC
140 S. Dearborn Street, Ste. 1610
Chicago, Illinois 60603
(872) 804-3400
sam@teamjustice.com
notices@teamjustice.com

Nick Wooten
DJC LAW, PLLC
1012 West Anderson Lane
Austin, Texas 78757
(512) 220-1800
nick@teamjustice.com
*Lead Trial Attorney*

*Counsel for Plaintiff*