UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFREY SCHWARTZ, <br><br> Plaintiff, <br><br> v. <br><br> SUPPLY NETWORK, INC., D/B/A VIKING SUPPLYNET, <br><br> Defendant. | No. 23 CV 14319 <br><br> Judge Georgia N. Alexakis |

**MEMORANDUM OPINION AND ORDER**

From October 2017 to June 2022, Illinois citizen Jeffrey Schwartz worked as a delivery driver for defendant Supply Network Inc., a Michigan company which does business as Viking SupplyNet ("Viking"). Schwartz alleges that during that period Viking used a time clock system that scanned his fingerprints in violation of the Illinois Biometric Information Privacy Act ("the Act"). 740 ILCS 14/1. But Schwartz relies on diversity jurisdiction to get his state-law suit into federal court, and Viking moves to dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing that a recent amendment to the Act makes it a legal impossibility for Schwartz to meet the $75,000 amount-in-controversy requirement of 28 U.S.C. § 1332(a). Because the amendment does not apply retroactively and Schwartz met the amount-in-controversy requirement at the time of filing, Viking's motion is denied. [45].

**I.      Legal Standards**

Federal Rule of Civil Procedure 12(b)(1) governs dismissals based on a lack of subject-matter jurisdiction. "In evaluating a challenge to subject matter jurisdiction,

the court must first determine whether a factual or facial challenge has been raised." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). A factual challenge is one where there is "in fact" no subject matter jurisdiction, even if the pleadings are formally sufficient. *Id.* A facial challenge is one where the plaintiff has not "sufficiently alleged a basis of subject-matter jurisdiction." *Id.* (internal quotations omitted).

Here, Viking presents a facial challenge to subject-matter jurisdiction. Even assuming the truth of Schwartz's allegations, Viking maintains that Schwartz still cannot satisfy the amount-in-controversy requirement. *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

Schwartz bears the burden of establishing jurisdiction. *Id.* at 443. At this stage, the Court accepts all factual allegations in his complaint as true and draws all reasonable inferences in his favor. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

## II. Background

The relevant facts are straightforward. The Court accepts as true Schwartz's allegation that his biometric information was collected "not less than 1,000 times during the course of his employment," each time Viking's time clock scanned his fingerprints or hand geometry. [1] ¶¶ 12, 21. The "biometric identifiers" protected by the Act include "fingerprint[s]" and "scan[s] of hand . . . geometry," 740 ILCS 14/10, and a violation of the Act results in liquidated damages of $1,000 per violation or $5,000 per intentional or reckless violation. 740 ILCS 14/20.

In 2023, the Supreme Court of Illinois read the Act to include a "per-scan" theory of violation, which Schwartz relies on here: That is, each scan of Schwartz's

fingerprints or hand geometry in violation of the Act was its own violation, which at 1,000+ scans could result in more than $1 million in liquidated damages under the Act. *Cothron v. White Castle Sys., Inc.*, 2023 IL 128004 ¶ 24. Perhaps recognizing *Cothron*'s concern that its interpretation of the Act might result in "potentially excessive damages," *id.* ¶ 43, the Illinois legislature amended the Act in August 2024. *See* 740 ILCS 14/20, *as amended by* SB 2979, Public Act 103-0769. The amended Act clarifies that when an entity subject to the Act "in more than one instance, collects, captures, purchases, receives through trade, or otherwise obtains the same biometric identifier or biometric information from the same person using the same method of collection" in violation of the Act, the entity "has committed a single violation ... for which the aggrieved person is entitled to, at most, one recovery." *Id.* 14/20(b)–(c).

### III.    Analysis

#### A.    Retroactivity of the Amended Act

The parties agree that the Act as amended does away with *Cothron*'s "per-scan" theory of violation, and if Schwartz's alleged violations were to begin today, he would at most be entitled to $5,000 for a single violation of the Act. [45-1] at 2–3; [50] at 2. The dispute is over timing. Viking argues that the amendment merely clarified "that the BIPA does not—and never did—allow for an award of statutory damages on a 'per-scan' basis" and that Schwartz thus could only ever recover for a single violation of the Act. [45-1] at 2. Under Viking's theory, it is not now, and never was, legally possible for Schwartz to meet the $75,000 damages threshold for diversity jurisdiction. *Id.* For his part, Schwartz contends that the amendment is not retroactive, and his claims thus remain subject to the more generous-to-him *Cothron*

3

"per-scan" rule, under which he has easily alleged the required amount in controversy. [50] at 5.

Viking cites public statements by legislators to suggest the amendment merely clarified the true and original meaning of the Act. [45-1] at 7–8. But Illinois law presumes that amendments are intended to change, not clarify, "the law as it previously existed." *K. Miller Const. Co. v. McGinnis*, 238 Ill. 2d 284, 299 (2010). Although that presumption "may be overcome" when "the enacting body declare[s] that it was clarifying a prior enactment," *id.*, public statements by a handful of individual lawmakers does not convincingly demonstrate such a declaration. As the Seventh Circuit has noted, "the text is law and legislative intent a clue to the meaning of the text, rather than the text being a clue to legislative intent." *Cont'l Can Co., Inc. v. Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund*, 916 F.2d 1154, 1158 (7th Cir. 1990). Nothing in the text of the amendment indicates that it is merely clarifying the Act, even though the legislature can expressly indicate its intent to clarify in the statutory text. *See Harris Bank St. Charles v. Weber*, 298 Ill. App. 3d 1072, 1078, 1080 (2d Dist. 1998). Moreover, even if the Court were to look beyond the amendment's text, Viking cites no "authoritative source" of legislative intent; again, it cites only various comments from various legislators. *See Garcia v. United States*, 469 U.S. 70, 76 (1984) (explaining that "the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which "represen[t] the considered and collective understanding of those

4

Congressmen involved in drafting and studying proposed legislation," not "passing comments of one Member" and "casual statements from the floor debates").

"[C]onflict or ambiguity ... prior to the amendment" can also indicate an amendment is a clarification and thus rebut the presumption that an amendment "was intended to change the law as it previously existed." *See McGinnis*, 238 Ill. 2d at 299 (cleaned up). But the Court is neither able nor willing to revisit the Illinois Supreme Court's conclusions regarding the clarity of the Act's original text. *See Montana v. Wyoming*, 563 U.S. 368, 377 n.5 (2011) ("The highest court of each State, of course, remains the final arbiter of what is state law.") (cleaned up). *Cothron* at several points notes that "the [2008] statutory language clearly supports" its per-scan interpretation. 2023 IL 128004, ¶ 40; *see also id.* ¶ 28 ("We agree with plaintiff that the plain language of the statute supports her interpretation" of per-scan violation."); *accord id.* ¶¶ 20, 24, 29, 30, 32, 41. Simply put, *Cothron* saw no ambiguity in the text of the Act itself. Likewise, while "conflict" can indicate legislative intent to clarify a statute, there was no conflict to resolve in *Cothron*: the question in *Cothron* was certified from the Seventh Circuit, and *Cothron* reached the "same conclusion" about per-scan violations as an earlier Illinois appellate court. *Id.* ¶¶ 1, 24.

Viking argues that *Cothron*'s tail-end suggestion "that the legislature review … policy concerns [regarding potentially excessive damages] and make clear its intent regarding the assessment of damages under the Act," *Cothron*, 2023 IL 128004, ¶ 43, serves as evidence of the legislature's intent to clarify the Act when later amending it. [45-1] 11–12. But *Cothron*'s "make clear" phrasing does not cabin the

5

legislature's future action or by itself overcome the presumption that the law has been changed rather than clarified. *See McGinnis*, 238 Ill. 2d at 299. If the Illinois legislature had responded to *Cothron's* invitation by repealing the Act altogether, that action could not be credibly characterized as a mere "clarification."

Viking also points to a recent case in this district to support its argument that the amendment is merely a clarification. [72] at 2–5; [72-1]; *see Gregg v. Cent. Transp. LLC*, No. 24 C 1925, 2024 WL 4766297 (N.D. Ill. Nov. 13, 2024). [72], [72-1]. *Gregg* does not change the Court's analysis. As discussed above, while ambiguity in a statute prior to an amendment can indicate clarification rather than change, *see McGinnis*, 238 Ill. 2d at 299 (citing *Middleton*, 578 F.3d at 663), the relevant inquiry concerns ambiguity in the statutory text itself, *see Middleton*, 578 F.3d at 664 ("As we explained in the first portion of our opinion ... text of the two statutes was not ambiguous, leaving nothing for Congress to 'clarify.'"). And the Illinois Supreme Court found the statutory language here clear. *E.g.*, *Cothron*, 2023 IL 128004 ¶¶ 30, 40.

Finally, although the amendment is arguably "consistent with a reasonable interpretation of the prior enactment and legislative history," *McGinnis*, 238 Ill. 2d at 299, it is also consistent with the legislature course-correcting the unintended results of the original statute. So that consistency by itself cannot overcome the state-law presumption that the statute has been changed rather than clarified. *Id.*

Because the amendment is a change rather than a clarification, the Court must determine if that change is retroactive. Neither party cites to a precedential Illinois

6

case interpreting the amended Act, nor has the Court discovered one, so the Court reviews this question as a matter of first impression. In evaluating retroactivity, both parties discuss at length *Dardeen v. Heartland Manor, Inc.*, 186 Ill. 2d 291 (1999), which considered whether the repeal of a statute's treble damages provision affected a "vested right" of the plaintiff. [45-1] at 14–15; [50] at 6–7; [60] at 6–7.

In *Dardeen*, the Supreme Court of Illinois applied its holding from *First of America Trust Co. v. Armstead*, 171 Ill.2d 282 (1996), "that the application of new legislation to pending suits or preexisting causes of action is governed by the law that applies by its terms at the time of the appeal, unless doing so would interfere with a vested right." *Dardeen*, 186 Ill. 2d 291 at 295 (cleaned up). *Dardeen* explained that "vested rights" in Illinois are "interests that are protected from legislative interference by [the Illinois] due process clause." *Id. Dardeen* concluded that because the treble damages provision "related solely to a remedy" and "a plaintiff has no vested right to a particular ... remedy" under the Illinois constitution, the repeal of the provision did "not affect a vested right" and therefore could apply retroactively. *Id.* at 296.

*Dardeen* is of limited use, however, as the Illinois Supreme Court has since instructed that "Illinois courts no longer utilize a vested rights analysis to determine temporal reach." *See Perry v. Dep't of Fin. & Prof'l Regulation*, 2018 IL 122349, ¶ 64.[1] Instead of the *Armstead* approach, Illinois courts have now expressly adopted the

---

[1] The existence of a "vested right" might still provide the basis for a state constitutional due-process challenge to a law, but the Court does not understand either party to be making such an argument. *Perry*, 2018 IL 122349, ¶ 64.

7

approach toward retroactivity set out by the United States Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). *See Perry*, 2018 IL 122349, ¶ 64. Under the *Landgraf* approach, "the first question is whether the legislature has clearly indicated the temporal reach of an amended statute." *Caveney v. Bower*, 207 Ill. 2d 82, 91 (2003). If so, that intent is given effect absent some constitutional prohibition. *Id.* But if the legislature has not indicated its intent, a court moves on to look at the retroactive impact of the amended statute. *Id.*

Section 4 of the Illinois Statute on Statutes provides a default answer to the legislative-intent question: amendments that are "procedural in nature may be applied retroactively, while those that are substantive may not." *People ex rel. Madigan v. J.T. Einoder, Inc.*, 2015 IL 117193, ¶¶ 31–32; 5 ILCS 70/4. Owing to this default answer, "the [Illinois] legislature has clearly indicated the temporal reach of *every* amended statute," *Caveney*, 207 Ill. 2d at 92, and it is thus "virtually inconceivable that an Illinois court will ever go beyond step one of the *Landgraf* approach, *id.* at 94 ("In light of section 4, the *Landgraf* analysis in Illinois becomes quite simple."). Because the "vested rights" analysis would be *Landgraf* step two, the Supreme Court of Illinois has cautioned against it. *Perry*, 2018 IL 122349, ¶ 64 ("To consider whether a right has vested necessarily involves an inquiry into retroactive impact, which would contravene this court's repeated holding that we do not reach step two of *Landgraf*."). "Stated differently, a *lack* of retroactive impact in a pending case does not somehow negate or trump the legislature's intent that a change of law is to be applied to future cases only." *Id.*

8

Returning to the facts at hand: In the text of the amendment to the Act, the Illinois legislature has not expressly indicated its intent regarding the amended statute's temporal reach. *See* 740 ILCS 14/20, *as amended by* SB 2979, Public Act 103-0769. That is, even though "the legislature is undoubtedly aware of how to clearly indicate its intent that a statute apply to causes of action currently pending in the courts," *Perry*, 2018 IL 122349, ¶ 66, it has not done so here.

So the decisive issue under § 4 is whether the amendment is substantive or procedural. "A substantive change in the law establishes, creates or defines rights." *Deicke Ctr. v. Ill. Health Facilities Planning Bd.*, 389 Ill. App. 3d 300, 304 (1st Dist. 2009). Put another way, "a substantive change in law establishes, creates, defines, or regulates rights, and thus could actually make [ ] one a party to a suit. *GreenPoint Mortg. Funding, Inc. v. Poniewozik*, 2014 IL App (1st) 132864 ¶ 18 (cleaned up). In contrast, "a procedural change in the law prescribes a method of enforcing rights or involves pleading, evidence and practice." *Deicke Ctr.*, 389 Ill. App. 3d at 303 (cleaned up). It involves "legal rules which direct the means to bring parties into court or the manner in which the court process shall proceed." *Ores v. Kennedy*, 218 Ill. App. 3d 866, 871 (1st Dist. 1991).

The Court does not find the Illinois Senate's short description of the bill amending the Act—which does not appear in the text of the amendment itself—to be dispositive on the legal question of whether the amendment is procedural or substantive. Nor does Viking, which argues that the short description is dispositive, cite any authority suggesting that it is. [41-1] at 13.

9

The Court also finds unpersuasive Viking's argument that because Schwartz has "no vested right to an award of statutory liquid damages, which relates to a remedy," the amendment must be procedural. [45-1] at 14 (citing *Dardeen*, 186 Ill.2d at 299). Again, Illinois courts no longer use *Dardeen's* "vested rights" approach to determine temporality. *See Perry*, 2018 IL 122349, ¶ 64. But even under that approach, the amendment does not merely change the remedy for a violation of the Act; it also redefines what constitutes a violation of the Act in the first place. In *Cothron*, the Illinois Supreme Court held that "the statutory violation itself is the injury for purposes of a claim under the Act." 2023 IL 128004, ¶ 38. For Schwartz, the amendment changes the number of statutory violations—and thus injuries that he has suffered—from more than a thousand to just one. *Accord Rojo v. Homer Tree Care, Inc.*, No. 23 L 8588, slip op. at 8 (Cook Co., Ill. Cir. Ct. Oct. 30, 2024) ("[T]he amendment did add substantive provisions that completely altered what actions constitute a violation. ... The Court finds that the amendment is a substantive change in the law rather than procedural and thus, cannot be retroactively applied.").

Although the line between substance and procedure "may often be unclear," *Deicke Ctr.*, 389 Ill.App.3d at 303 (quoting *Rivard v. Chicago Fire Fighters Union, Local No. 2*, 122 Ill.2d 303, 310 (1988)), the basic question of whether Schwartz has been injured just once or injured more than a thousand times strikes the Court as a

10

matter of substance, not of procedure.[2] *See, e.g.*, *People v. Atkins*, 217 Ill. 2d 66, 72 (2005) ("Substantive amendments include those that alter the scope or the elements of a crime."). And the mere fact that a substantive amendment also has procedural ramifications does not transform it into a procedural amendment. *Id.* at 73.

The Court's conclusion that the amendment does not merely change the remedy is supported by principles of statutory construction. Under Illinois law "[s]tatutes should be construed, if possible, so that no term is rendered superfluous or meaningless." *Bonaguro v. Cnty. Officers Electoral Bd.*, 158 Ill. 2d 391, 397 (1994). Viking focuses on that portion of the amendment that states "the aggrieved person is entitled to, at most, *one recovery* under this Section," but the amendment also provides that "a private entity that, in more than one instance, collects ... or otherwise obtains the same ... biometric information from the same person using the same method of collection in violation of subsection (b) of Section 15 *has committed a single violation*." 740 ILCS 14/20 (emphasis added). It would be superfluous to read this provision redefining a violation for purposes of the Act as merely a limitation on the plaintiff's recovery, where the amendment already expressly limits plaintiffs to "one recovery."

---

[2] Several Illinois circuit courts have recently reached the same conclusion. *See Wallace v. Vee Pak, LLC*, No. 24 L 4560, slip op. at 8 (Cook Co., Ill. Cir. Ct. Oct. 10, 2024); *Gagen v. Mandell Menkes, LLC*, No. 2023 L 008294, slip op. at 4 (Cook Co., Ill. Cir. Ct. Oct. 24, 2024); *Rojo*, No. 23 L 8588, slip op. at 8 (Cook Co., Ill. Cir. Ct. Oct. 30, 2024).

Because the amendment to the Act is substantive, and the Illinois legislature did not expressly make it retroactive, Illinois law compels that the amendment be applied prospectively, not retroactively.

### B. The Time-of-Filing Rule

Even if the amendment to the Act did limit the amount Schwartz can now recover, the amendment would not affect the Court's subject-matter jurisdiction. Schwartz filed his complaint on September 29, 2023, more than ten months before the Act was amended. [1]. And as discussed above, the amendment was not a "clarification" of the 2008 Act but a change to it. This means that when Schwartz filed his complaint, *Cothron's* "per-scan" theory was still in effect. All Schwartz must do to meet the amount-in-controversy requirement of 28 U.S.C. § 1332(a) is, "*on the date of filing . . .* allege in good faith that over $75,000 was at stake." *Sykes v. Cook Inc.*, 72 F.4th 195, 206 (7th Cir. 2023) (emphasis added). And there is no doubt that his alleged 1,000+ violations of the Act met that amount-in-controversy requirement when Schwartz filed: after *Cothron* but before the amendment.

### IV. Conclusion

For the foregoing reasons, the amendment to the Act is not retroactive, and, in any event, Schwartz would have met the amount-in-controversy requirement at time of filing. Schwartz has sufficiently alleged the Court's subject matter jurisdiction, and Viking's motion to dismiss [45] is therefore denied.

12

13

ENTER: 11/22/24

_____
Georgia N. Alexakis
United States District Judge